(No. 3933—

Dr. Charles Ahronheim, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed September 12, 1946.*

Paul C. Ross and Frank M. Martoccio, of Chicago, for claimant.

George F. Barrett, Attorney General, and William L. Morgan, for respondent.

Eckert, C. J.

On December 18th, 1944, claimant, Dr. Charles Ahronheim, while in the employ of the respondent at the Elgin State Hospital fell on a slippery side walk on the hospital grounds and injured his right shoulder and back. The injury caused pain in claimant's back, and grew increasingly worse until the 10th of January, 1945, when claimant reported to Dr. Green of the Hospital Staff, who put claimant's right arm in a sling. The report made at that time to the Department of Public Welfare classified the injury as serious and described it as: "small area of swelling at anterior edge of the right deltoid muscle, nutritional disturbance of the right 4th and 5th finger nails."

Claimant's arm remained in a sling until some time in July or August, without improvement. Diathermy treatments, in the meantime, were given to claimant at the Sherman Hospital in Elgin, and claimant was hospitalized at the Elgin State Hospital for eight days under the care of Dr. Green, Dr. Reid and Dr. Leibert. Claimant left the employ of the respondent on the first of May, 1945.

The report of the attending physician, made to the Department, indicates that the condition of claimant's shoulder had not improved when he was last examined

by Dr. Green on April 30th, 1945, and the prognosis was that the condition might become chronic.

After claimant left the Elgin State Hospital, he continued to consult various doctors in the hope of obtaining relief, but without success. The services of these various physicians were all secured at claimant's own election. At the time of the hearing, on October 29, 1945, the pain in claimant's shoulder had not lessened, and he testified that it was alleviated only by the use of sedatives and hypnotics. His postero-lateral abduction was restricted, and he was unable to close or make a fist. He testified that the fingers of the right hand were partially numb, as if they were covered with silk, and stated, that in his work as a physician, his right hand and arm are entirely useless.

Dr. George Green, the attending physician, testified that he had no knowledge as to the fall which occasioned the injury, but stated that the condition now existing, as described by the claimant, might be a result of an injury such as claimant stated he received. Dr. Green, just prior to the hearing, found claimant unable to lift his right arm anteriorly above the level of the shoulder; found claimant limited as to lateral abduction; found claimant unable to place his right hand behind his back; found claimant had atrophic changes of the finger nail of the right fourth finger, and the ring finger; and found a small lump at the anterior border of the right deltoid muscle near its insertion on the humerus. Dr. Green stated that it was unlikely that such a condition would occur from anything other than an injury. He considered the condition chronic.

Dr. S. I. Weiner testified that he examined the claimant on October 29, 1945, at which time he took an X-ray of both claimant's shoulders. These X-rays were ad

mitted in evidence, and show claimant's left shoulder perfectly normal, but show, as to the right shoulder, calcification around the margin of the glenoid fauca of the scapula, and calcifications over the greater tubercle of the head of the humerus, and streaks of calcification across the heads of the humerus proper.

Dr. Weiner also testified that he had made a medical examination of claimant which disclosed an atrophy of the right upper extremity, localized tenderness from the angle of the shoulder and over the anterior part of the shoulder and the region of the coracoid process of the scapula. His diagnosis was traumatic periarthritis of the right shoulder, and he stated that it was definitely of a traumatic nature because it is confined to the periarticular structures and not to the articular structure. Dr. Weiner stated that in his opinion the condition is permanent, and that there is a total functional loss of use of claimant's right arm.

At the time of the injury, the employer and employee were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. The accident arose out of and in the course of claimant's employment. During the year immediately preceding the injury, claimant's salary totaled $2,760.00. Claimant, although unable to work from January 10, 1945, to May 1, 1945, received his full salary in the amount of $899.33.

Claimant's average weekly wage was $53.07, and his compensation rate is therefore $17.63. The court is of the opinion that he is entitled to an award for temporary total disability for a period of 15 5/7 weeks, or the sum of $277.04.

The court is also of the opinion that claimant has

suffered a complete loss of use of his right arm. He is therefore entitled to an award, for such loss of use, of $17.63 per week for a period of 225 weeks, or the sum of $3,966.75.

A. M. Rothbart Court Reporting Service is entitled to payment of $41.50 for reporting the testimony at the hearing.

No award can be made for medical expenditures, since claimant elected to secure these services at his own expense.

An award is therefore entered in the total sum of $4,285.29, from which must be deducted moneys paid to the claimant by respondent during the period of January 10, 1945, to May 1, 1945, being the sum of $899.33, leaving a balance of $3,385.96, payable as follows:

a) the sum of $41.50 to A. M. Rothbart Court Reporting Service, forthwith.

b) the sum of $1,256.77 to claimant, forthwith.

c) the sum of $2,087.69 to claimant in weekly installments, beginning on the 12th day of September, A. D. 1946, at the rate of $17.63 per week for a period of one hundred and eighteen weeks, with an additional final payment of $7.35.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."